UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 16 CR 50054 |
| v. | |
| NATHAN R. TAUCK | Judge Philip G. Reinhard |

### GOVERNMENT'S SENTENCING MEMORANDUM

For the reasons stated herein, the government respectfully requests that the Court impose a sentence of 50 years' imprisonment, which is necessary and reasonable upon consideration of the relevant sentencing factors set forth in 18 U.S.C. § 3553(a).[1] Because the sentencing guidelines do not account for defendant's pattern of predatory conduct which began before, and continued after the charged conduct, the government requests an upward departure from the guidelines.

Defendant faces sentencing after pleading guilty to one count of using a minor to engage in sexually explicit conduct for the purpose of creating visual depictions of that conduct ("production of child pornography") in violation of 18 U.S.C. § 2251(a) and one count of transportation of child pornography for distributing the image he created, in violation of 18 U.S.C. 2252A(a)(1). Defendant also admitted to stipulated offenses and relevant conduct involving his possession of more than 600 images and 31[2] videos of child sexual abuse material on electronics seized from his residence and transportation of some of those images. Defendant faces a statutory minimum of 15 years imprisonment up to a maximum of 50 years' imprisonment, to be followed

---

[1] The Presentence Investigation Report is cited as "PSR," followed by the applicable page number.
[2] Application Note 6 to U.S.S.G §2G2.2(b)(7) states that, "Each video, video-clip, movie or similar visual depiction shall be considered to have 75 images." Defendant possessed approximately 1,035 images and the equivalent of 2,325 images from the videos (31 x 75).

by a period of supervised release between five years and life. He also faces a potential fine, restitution, and forfeiture of various items.

I. **Factual Background**

The investigation began in 2015 when Homeland Security Investigations ("HSI") received information that defendant was involved in the possession and distribution of child pornography. The investigation revealed that defendant produced and transmitted at least one lewd and lascivious image of child pornography that depicted a very young child that defendant had regular access to. Defendant also produced other images of the same child that are "child erotica." One image featured the same child in clothing with the child's back to the camera. The photo includes defendant's hand holding his erect penis. PSR 21. Defendant then distributed one of these images to another man via the internet through in a chatroom on KIK. Defendant, using the name "scream_for_mommy_oh3", told this adult man to give his child Benadryl to knock her out so the man could "ass fuck" the child. Defendant asked the other man to send back images or videos of the child being sexually abused. PSR 20-21.

HSI executed a search warrant at defendant's residence. Defendant was present and questioned about his use of the internet to view and share child pornography. Defendant denied any involvement in the production, possession or distribution of child pornography. PSR 22-25. Several of defendant's electronic devices were seized and searched, resulting in the recovery of over 600 images of child pornography and 31 unique videos. Approximately 240 of these images depicted infants and toddlers subjected to sadistic and masochistic sexual abuse, to include bestiality. PSR 27.

Approximately two weeks after the search warrant, defendant obtained a passport and left the United States. PSR 30. Defendant traveled through Europe and Asia, eventually stopping in

China where he sought and obtained employment as a teacher. PSR 123. Defendant began communicating with Individual A through "WhatsApp", an online chat service. Defendant sent Individual A sexually explicit photos of himself, asked to be called "Daddy" and sent Individual A images and videos of infant and child pornography. PSR 31-32. Despite Individual A's protest, defendant continued to send this material and asked Individual A to watch and participate in the rape and sadistic sexual abuse of babies. Defendant told Individual A he was looking to buy a "baby hooker" and very graphically explained to Individual A defendant's intentions. Due to their explicit nature, these chats, words spoken by defendant, have been provided to probation and defense counsel and are not reiterated in this memo. PSR 34. (*See Supplement to Government's Official Version*)

When defendant spoke of his efforts to buy a baby, Individual A warned defendant that he was engaging in child trafficking and that his behavior was criminal. Individual A stopped communicating with defendant and reported him to authorities. Defendant's Chinese passport was revoked and he was returned to the United States in February 2018, having been gone for nearly 50 months following the search warrant. PSR 34-27.

## II. Sentencing Guidelines and Criminal History

### A. Offense Level Calculations

The government agrees with the Presentence Investigation report ("PSR") that the November 2021 edition of the Guidelines Manual governs the calculation of the advisory Guidelines range for this sentencing. PSR 43.

### B. Objections to the PSR

The government also agrees with the defendant's advisory Guidelines calculations contained in the PSR. PSR 128-130. The government does not believe USSG § 5G1.1 is applicable to the determination of the sentence as there are multiple counts of conviction.

### C. Criminal History Category

Similarly, the government agrees with Probation's calculation and conclusion that the defendant is in Criminal History Category II. PSR 75-77.

### III. The Factors Set Forth in 18 U.S.C. § 3553(a) Warrant a Sentence of 50 Years' Imprisonment

As set out in Title 18, United States Code, Section 3553(a), the Court must consider several factors in determining the sentence, including but not limited to, the nature and circumstances of the offense, defendant's history and characteristics, and the need for the sentence imposed to reflect the seriousness of the offense, provide adequate deterrence, protect the public, and to provide just punishment. Each of the factors is discussed below.

### A. Nature and Circumstances of the Offense

Defendant's criminal conduct is chilling. Defendant took sexually exploitive images of a vulnerable child he had regular access to for his own sexual gratification. Defendant then transmitted at least one of those images through a KIK chat to another man while encouraging the man to sexually abuse his daughter after dosing her with Benadryl. Defendant asked the man to send him a video of the abuse in return. PSR 21. In KIK chatrooms, defendant distributed numerous images and videos to other users in exchange for more child pornography, particularly the sadistic and masochistic sexual abuse of babies and toddlers. These images and videos came from defendant's collection of over 600 torturous images and videos of child pornography---videos and images of children being anally, vaginally, and orally penetrated by adult men and women.

4

PSR 17-19. Of the known images in his collection, defendant possessed the most images of very young victims. Defendant possessed 12 images from the "Aprilblonde" series and 23 images and two videos from the "Sweet Sugar Series". "April" was sexually abused from ages 5 to 8. "Pia", the youngest of the Sweet Sugar Series, was 4 years old at the time of her sexual abuse, which was recorded almost daily over the course of a year.

The Supreme Court has noted the link between child pornography and continued sexual abuse of children: "The distribution of photographs and films depicting sexual activity by juveniles is intrinsically related to the sexual abuse of children . . . . [The] materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation." *New York v. Ferber*, 458 U.S. 747, 759 (1982), discussed in *United States v. Moore*, 215 F.3d 681, 685-86 (7th Cir. 2000).

Following the discovery of his collection of child pornography, defendant left the United States and continued his quest to engage in deviant sexual behaviors by continuing to possess and distribute child pornography through WhatsApp while he attempted to purchase a baby for his own sexual gratification when he was in China. PSR 31-34.

### B. *History and Characteristics of the Defendant*

Defendant's history of predatory behavior warrants an upward departure from the sentencing guidelines. Over the course of at least four years, defendant engaged in sustained and systematic viewing and dissemination of child pornography, all while he (in graphic detail) told others how he had sexually abused children he regularly had access to.

In 2013, the Illinois State Police investigated defendant for communicating with a minor outside of the United States. This minor reported that defendant coerced her into sending sexually exploitive pictures and videos of herself, and that defendant told her he had anally raped three

5

young children he had regular access to. The minor also reported that defendant sent her a video in which defendant was masturbating with a pair of children's underwear on his penis. PSR 78.

In 2015, at or near the time of the charged conduct, defendant communicated in several toddler/infant focused KIK chatrooms in which he openly shared his deviant sexual interests. Defendant also shared and solicited child pornography images and videos. In these chats, defendant admitted to masturbating in the presence of children he had access to and ejaculating on their clothing. As with the "WhatsApp" chats, due to the graphic nature of the words used by defendant, the KIK chats have been provided to probation and defense counsel and are not reiterated in this memo. (*See Supplement to Government's Official Version*)

And while in China in 2017, defendant possessed and distributed child pornography to Individual A referenced above through WhatsApp and discussed with Individual A his efforts to buy a baby to anally rape and use as a "sex toy." Enjoying, or even tolerating, the sight and sound of a child in trauma suggests that defendant disregards the emotional suffering of children. This lack of empathy suggests defendant is more dangerous. *See United States v. Maurer*, 639 F.3d 72, 78 (3d Cir. 2011) (sadists "delight in physical or mental cruelty"). The depraved nature of defendant's communications on KIK and WhatsApp are indicative of his dangerousness. Coupled with defendant's efforts to buy a baby in China, it is clear the path defendant was set on.

A sentence of 50 years' imprisonment accurately reflects defendant's history and characteristics. The sentencing guidelines do not account for defendant's continued pattern of conduct, or defendant's attempt to engage in sex trafficking while in China, his travel for the purpose of engaging in sexual conduct with a minor (a baby), or his possession and transportation of child pornography while in China through WhatsApp. Defendant's conduct demonstrates that he has deviant sexual interests and is willing to use physical force and verbal coercion to engage

in sexual conduct with them. His personal characteristics include manipulation, coercion, and enticement, as well as making others feels safe enough to allow him regular access to children. Whether he actually acted on his urges or not may never be known. Defendant's described desires are <u>dangerous</u>. Defendant repeatedly discussed anally raping children to death and described his efforts to purchase a three-month-old in China. Defendant presents a danger, not only to the child he sexually exploited by producing child pornography, but to children all over the world. A sentence of 50 years' imprisonment is appropriate taking into consideration the nature and circumstances of the offense. See *United States v. Brown,* 634 F.3d 954, 956 (7th Cir. 2011)(defendant's sentence based in part on disturbing and graphic discussions related to child pornography and sex with children, including one discussion in which defendant said he wished had a daughter so he could have sex with her); *United States v. Wayerski*, 624 F.3d 1342, 1354 (11th Cir. 2010)(affirming 365 month sentence for child exploitation offenses in part because defendant posted a diary entry where he described his sexual fantasies about an eight-year-old neighbor).

    C.    *The Need for the Sentence to Reflect the Seriousness of the Offense*

As a crime that involves the exploitation of minors, the extreme seriousness of the defendant's offenses is self-evident. Few crimes are as grave.

The nature and circumstances of the defendant's offenses are no less serious than the nature of the crime. The defendant was not just fascinated with one particular minor. He was obsessed with the ritualistic and masochistic sexual abuse of the most vulnerable—babies, toddlers, and young children—so much so that he sent Individual A an 8-minute video of a baby being sexually assaulted to death, which he described as, "a baby sex toy…plus it lives for 8 minutes during anal rape. Balls deep." PSR 34. His sexually deviant conduct constituted a pattern from at least 2013

7

through 2015 that included the use of physical and verbal coercion to use minor victims to produce images and videos for defendant's sexual gratification. PSR 21, 78. Defendant also used these images and videos as a commodity on internet platforms in exchange for other images and videos of sexual abuse which defendant encouraged. Once in China, defendant continued to distribute horrendous videos of the sexual abuse of infants and babies and was descriptive about his attempts to buy a child. Individual A took defendant's plans seriously enough that Individual A reported him to authorities. PSR 32-34. The defendant's behavior was stopped by his arrest, he did not voluntarily curb his conduct.

D. The Need for the Sentence to Afford Adequate Deterrence and Protect the Public

A sentence of 50 years' imprisonment is the only sentence that will protect the public--the children--from defendant, provide adequate deterrence, and serve as just punishment. An above guidelines sentence is warranted by the need to incapacitate the defendant and to deter him and like-minded individuals from committing such heinous crimes in the future. Sex offenders "are more likely to recidivate than other criminals, . . . because their criminal behavior is for the most part compulsive rather than opportunistic." Craig, 703 F.3d at 1003-04 (Posner, J., concurring) (citing Virginia M. Kendall and T. Markus Funk, *Child Exploitation and Trafficking: Examining the Global Challenges and U.S. Responses* 310 (2012)). Given defendant's unabated endeavor to get his hands on a baby to "rape to death", it should be inferred that his distorted sexual appetite will continue to tempt him to reoffend for years. The following are from the WhatsApp chats:

- ```
  Tauck - Just once.  Then we can move past it.
  ```
- ```
  Tauck - give me this one thing
  ```
- ```
  Tauck - I know that this is all I need to be rid of it
  ```

Accordingly, even if there is uncertainty in predicting future behavior, the public—not the person who by his conduct has proven himself to be a danger should be given the benefit of any doubt—by placing the risk of uncertainty on defendant. To reduce this risk, the Court should ensure that defendant stays in prison for as long as statutorily possible.

### IV. Supervised Release

The government requests that the court impose a lifetime term of supervised release. The parties will separately file a "Joint Submission on Conditions of Supervised Release" containing the parties' proposed agreements related to the specific conditions outlined on pages 29-35 of the PSR.

### Conclusion

Accordingly, the government respectfully requests that this Court impose a sentence of 50-years' imprisonment: 30 years' imprisonment on count one, and 20-years' imprisonment on count two to be served consecutively, to be followed by a lifetime of supervised release, restitution, no fine, and a $100 special assessment on each of the two counts of conviction.

Respectfully submitted,

MORRIS PASQUAL
Acting United States Attorney

By: /s *Jessica S. Maveus*
JESSICA S. MAVEUS
Assistant United States Attorney
327 S. Church, Room 3300
Rockford, Illinois 61101
(815) 987-4444

## CERTIFICATE OF FILING AND SERVICE

The undersigned Assistant United States Attorney hereby certifies that the following document:

**GOVERNMENT'S SENTENCING MEMORANDUM**

was served on April 28, 2023, in accordance with Fed. R. Crim. P. 49, Fed. R. Civ. P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

<div style="text-align: right;">

/s *Jessica S. Maveus*
JESSICA S. MAVEUS
Assistant United States Attorney
Suite 3300
327 South Court Street
Rockford, IL 61101
(815) 987-4444

</div>