UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 16 CR 50054 |
| v. | ) | |
| | ) | Judge Philip G. Reinhard |
| NATHAN TAUCK | ) | |

## UNITED STATES' POSITION ON RESTITUTION

For the reasons set forth below, the government respectfully requests that the Court enter a restitution award as agreed to by the parties, and an award for "April" of not less than $5,000. The government incorporates herein the Government's Sentencing Memorandum (R. 94) filed on April 28, 2023.

## BACKGROUND AND PROCEDURAL HISTORY

On November 28, 2022, defendant pleaded guilty, pursuant to a Plea Agreement (R. 88), to one count of using a minor to engage in sexually explicit conduct for the purpose of creating visual depictions of that conduct ("production of child pornography") in violation of 18 U.S.C. § 2251(a) and one count of transportation of child pornography for distributing the image he created, in violation of 18 U.S.C. 2252A(a)(1). The factual basis for defendant's plea included defendant's possession of more than 600 images and 31 videos[1] of child sexual abuse material. It is undisputed that defendant has agreed to pay restitution arising from the relevant conduct set

---

[1] Application Note 6 to U.S.S.G §2G2.2(b)(7) states that, "Each video, video-clip, movie or similar visual depiction shall be considered to have 75 images." Defendant, in fact, possessed approximately 12,730 images and 1,638 videos, the equivalent of over 135,000 images.

forth in the plea agreement pursuant to Title 18, United States Code, Sections 3663(a)(3) and 3664 (R. 88, paragraphs 14 and 15).

In advance of sentencing, twenty victims submitted restitution requests. Representatives for eighteen victims have agreed to defendant's offer to pay each victim restitution in the amount of $3,000. Restitution is resolved for the following victims: "John Does 1-5", "Violet", "Henley", "Jane", "Sierra", "Savannah", "Skylar", "Sally", "Jenny", "Sarah", "Ava", "Mya", "Pia", and "Lily". The government has contacted the representative for "Tara" as to defendant's agreement but has not heard back as of the date of this submission.

Of the remaining victims who request restitution, "April" submitted a restitution request for $20,000 which was later amended to $5,000 by April's attorney. The request indicates that April's expenses include costs related to April's future mental health needs approximate to $226,375 for lifelong mental health care treatment. Defendant possessed 12 images of April.

## APPLICABLE LAW

Pursuant to 18 U.S.C.§ 3663(a)(3), a sentencing court may order restitution in any criminal case to the extent agreed to by the parties in a plea agreement. Statutorily, restitution for victims of sexual exploitation offenses is mandated under 18 U.S.C. § 2259 which provides a guidepost in agreed-restitution cases as to how the court may calculate restitution for April. Specifically, § 2259 requires the court to direct the defendant "to pay the victim….the full amount of the victim's losses," which includes: (a) medical services related to physical, psychiatric, or psychological care;

(b) physical and occupational therapy or rehabilitation; (c) necessary transportation, temporary housing, and childcare expenses; (d) lost income; (e) attorney's fees and costs; and (f) any other losses suffered by the victim as a proximate result of the offense. 18 U.S.C. § 2259(b)(3).

In *Paroline v. United States*, 572 U.S. 434 (2014), the United States Supreme Court provided an analytical framework for determining an appropriate restitution award. The Court recognized that the calculation of restitution "cannot be a precise mathematical inquiry and involves the use of discretion and sound judgment." *Id.* at 459. In a child pornography case, where the government shows that a defendant possessed images and videos of a victim and the victim has outstanding losses caused by the continued trafficking of those images and videos, but where it is not possible to trace a particular loss amount to the defendant "by recourse to a more traditional causal inquiry, a court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses." *Id.* at 458. To that end, the court should start with a determination of each victim's losses caused by the continued trafficking of the victim's images and videos, and calculate an award based upon factors "that bear on the relative causal significance of the defendant's conduct in producing those losses." *Id.* at 460. The non-exhaustive list of factors includes:

1. The number of past criminal defendants found to have contributed to the victim's general losses;

2.  Reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses;

3.  Any available and reasonably reliable estimate of the broader number of offenders involved (most of whom may never be caught or convicted);

4.  Whether the defendant reproduced or distributed images or videos of the victim;

5.  Whether the defendant had any connection to the initial production of the images or videos of the victim;

6.  How many images of the victim the defendant possessed; and

7.  Other facts relevant to the defendant's relative causal role.

*Id.*

## RESTITUTION REQUESTED

The Court should enter a restitution award of $5,000 for April in consideration of the factors below.

As acknowledged by the Supreme Court in *Paroline*, "[t]he unlawful conduct of everyone who reproduces, distributes, or possesses the images of the victim's abuse…..plays a part in sustaining and aggravating this tragedy." *Id.* at 457. Here, because defendant possessed 12 images of April, he "play[ed] a part in sustaining and aggravating" the tragic abuse which caused their injuries and thus their general losses. Turning to the specific factors identified in *Paroline*, an award of restitution in the amount of $5,000 is appropriate given the number of images defendant possessed of April.

4

Amount of Victim's Losses

As a starting point, a court may "determine the amount of the victim's losses caused by the continuing traffic in the victim's images." *Paroline*, 572 U.S. at 458. As courts in the Seventh Circuit have recognized, "*Paroline* addressed a difficult, nearly intractable problem." *United States v. Sainz*, 827 F.3d 602, 605 (7th Cir. 2016). In *Sainz*, the defendant (who possessed six images of victim "Cindy") was ordered to pay restitution in an amount equal to 1/136, or what the court referred to as the "1/n method" because defendant was the 136th offender to be prosecuted and convicted for possessing images of Cindy. Although defendant was sentenced prior to the Supreme Court's ruling in *Paroline,* the Appellate Court upheld the District Court's order of restitution, stating:

> [I]t's ruling followed the same procedure of first calculating total loss and then determining what fraction of that loss should be attributed to the defendant. The district court did not explicitly discuss all of the factors that *Paroline* said may be relevant in determining the defendant's relative role. The district court's use of the 1/n method took into account the number of past criminal defendants found to have contributed to Cindy's total loss, which is one of the *Paroline* factors that was ascertainable in this case. While a district court could consider additional factors, the bottom line here is that the amount of the award is substantively reasonable. It is neither severe nor trivial. It is a reasonable and circumscribed award for Sainz's relative role in causing Cindy's harm. Though he neither produced nor distributed her images, he possessed them and in doing so re-victimized her and contributed significantly to her harm.

*Id.* at 606. *Sainz* delineates this Court's considerable discretion in calculating a restitution award that is fair, reasonable and just.

April has provided detailed calculations about her future mental health treatment expenses over the next thirty-plus years, to include individual psychotherapy provided by a therapist trained in sexual exploitation and trauma.

A. Number of Past Criminal Defendants Found to Have Contributed to the Victims' General Losses

To date, April has received approximately $187,901 in restitution payments, inclusive of attorney's fees and costs related to her representation. The number of restitution orders will continue to grow as depictions of April's abuse continue to be trafficked online and perpetrators are apprehended and successfully prosecuted. In considering this factor, other courts have awarded restitution by using the "1/n method," or dividing the total amount of losses by the number of defendants from whom the victim will likely recover, or by the number of standing restitution orders. However, this Court should remain mindful that the number of outstanding restitution orders does not reflect the total amount of likely monetary recovery in the future. Unfortunately, the chance of full restoration of losses is very low for victims of child pornography, as many defendants lack sufficient assets to pay their victims. *See* DEPARTMENT OF JUSTICE, VICTIM NOTIFICATION PROGRAM: RESTITUTION PROCESS, available at *https://www.justice.gov/criminal-vns/restitution-process* (last visited May 2, 2023.) While defendants may make partial payments toward the full restitution amounts ordered, it is rare that defendants pay the entire restitution amount. *Id*.

B.  Reasonable Prediction of Number of Future Offenders Likely to be Convicted
for Crimes Contributing to the Victims' Losses

As for predictions regarding how many individuals are likely to be caught and convicted of possessing or distributing images of April, it is truly almost impossible to tell. There is no limit to how long child pornography images traded on the internet will remain in circulation. The government expects that individuals will be caught in possession of images of April for the foreseeable future as her images have been distributed worldwide. Under these circumstances, the government requests that the Court decline to consider this factor.

C.  Reproduction or Distribution of Images of the Victim

Although there is evidence in the record that defendant shared images and videos of child pornography via KIK and WhatsApp, there is no evidence establishing that defendant reproduced or distributed specific images of April. The restitution award therefore should not be based upon this factor.

D.  Number of Images Possessed by Defendant

According to the National Center for Missing and Exploited Children and the forensic evidence in this case, defendant's devices contained 12 images of April. In comparison, the only series defendant possessed a higher number of images from was the "Sweet Sugar Series"—defendant possessed 25 images which encompassed Pia, Mya and Ava. All these images are permanent records of the sexual abuse and traumatization of these child victims. The knowledge that defendant possessed even one image of April's sexual abuse will undoubtedly cause her harm in the form of

humiliation, shame, fear, and emotional distress. As detailed in the restitution request for April, who was sexually abused from age five until eight, she "worries how the circulation of her images will affect her in the future, as an adult, a partner, a parent, in her career friendships, etc." All child victims are survivors, who carry on into adulthood, faced with the physical and psychological consequences of the abuse inflicted on them by their original perpetrators. These consequences are compounded by offenders who traffic in that abuse, and defendant must be held accountable for sharing in the harm caused to April and the cost of her recovery. This factor weighs in favor of a restitution award of $5,000 for April.

E. Nature of Images

Finally, the Court may consider the nature of the images that defendant possessed in determining the proper restitution award. The images that defendant possessed of April, who was sexually abused between the ages of 5 and 8, depict a young child being sexually assault orally, vaginally, and anally. April was forced to watch movies of other children being sexually abused while these images were created. The degrading nature of these depictions further supports an award of restitution of $5,000 for April.

## <u>CONCLUSION</u>

For the foregoing reasons, the United States respectfully requests that the Court order restitution for April in the amount of $5,000.

Respectfully submitted,
MORRIS PASQUAL
Acting United States Attorney

By:     /s *Jessica S. Maveus*
JESSICA S. MAVEUS
Assistant United States Attorney
327 S. Church, Room 3300
Rockford, Illinois 61101
(815) 987-4444

## CERTIFICATE OF FILING AND SERVICE

The undersigned Assistant United States Attorney hereby certifies that the following document:

UNITED STATES' POSITION ON RESTITUTION

was served on May 2, 2023, in accordance with Fed. R. Crim. P. 49, Fed. R. Civ. P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

/s *Jessica S. Maveus*
JESSICA S. MAVEUS
Assistant United States Attorney
327 S. Church, Room 3300
Rockford, Illinois 61101
(815) 987-4444

10